IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
NORTHWESTERN DIVISION

| | | |
|---|---|---|
| World Fuel Services Corporation, World Fuel Services, Inc., World Fuel Services Canada, Inc., Western Petroleum Company, Dakota Petroleum Transport Solutions, LLC, Petroleum Transport Solutions, LLC, DPTS Marketing, LLC, Dakota Plains Marketing, LLC, and Dakota Plains Transloading, LLC, | ) ) ) ) ) ) ) ) ) | **COMPLAINT AND JURY DEMAND** |
| Plaintiffs, | ) ) | Case No. 4:14-cv-054 |
| vs. | ) ) | |
| Alterra Excess & Surplus Insurance Company n/k/a Markel Corporation, | ) ) ) | |
| Defendant. | ) | |

World Fuel Services Corporation ("WFS Corp."), World Fuel Services, Inc. ("WFS Inc."), World Fuel Services Canada, Inc. ("WFS Canada"), Western Petroleum Company ("WPC"), Dakota Petroleum Transport Solutions, LLC ("DPTS"), Petroleum Transport Solutions, LLC ("PTS") and DPTS Marketing, LLC ("DPTS Marketing"), and Dakota Plains Marketing, LLC ("Dakota Plains Marketing") and Dakota Plains Transloading, LLC ("Dakota Plains Transloading") (collectively, the "Policyholders"), by and through their attorneys, state as their Complaint against Alterra Excess & Surplus Insurance Company n/k/a Markel Corporation (collectively, "Markel") as follows:

## I. NATURE OF THE ACTION

1. This is an action for declaratory judgment and breach of contract arising out of the refusal of defendant, Markel, to provide insurance coverage to the Policyholders for underlying lawsuits and related actions arising from a train derailment (the "Derailment"), which allege bodily injury and property damage as covered by the insurance policy purchased by the Policyholders.

2. Markel refuses to honor its obligations under a Commercial Excess Liability Policy it sold to the Policyholders.

3. The Policyholders seek a declaration that the terms of the Policy obligate Markel to provide coverage to the Policyholders for the underlying proceedings arising out of the Derailment. The Policyholders also seek monetary damages for Markel's breach of the Policy.

## II. PARTIES

4. World Fuel Services Corp. ("WFS Corp.") is a corporation organized and existing under the laws of the State of Florida, with its principal place of business in Florida.

5. World Fuel Services, Inc. ("WFS Inc."), a wholly owned subsidiary of WFS Corp., is a corporation existing under the laws of the State of Texas, with its principal place of business in Florida.

6. World Fuel Services Canada, Inc., a wholly owned subsidiary of WFS Corp., is a corporation organized and existing under the laws of British Columbia, Canada, with its principal place of business in Florida.

7. Western Petroleum Company, a wholly owned subsidiary of WFS Corp., is a corporation organized and existing under the laws of Minnesota, with its principal place of business in Minnesota.

- 3 -

8. Dakota Petroleum Transport Solutions, LLC, a joint venture in which WFS Inc. is a partner, is a limited liability corporation organized and existing under the laws of Minnesota, with its principal place of business in Minnesota.

9. Petroleum Transport Solutions, LLC , a subsidiary of WFS Corp., is a corporation organized and existing under the laws of Minnesota, with its principal place of business in Minnesota.

10. DPTS Marketing LLC, a joint venture in which WFS Inc. is a partner, is a limited liability corporation organized and existing under the laws of Minnesota, with its principal place of business in Minnesota.

11. Dakota Plains Transloading, LLC, a member of DPTS, is a limited liability corporation organized and exists under the laws of Nevada, with its principal place of business in Minnesota.

12. Dakota Plains Marketing, LLC, a member of DPTS Marketing, is a limited liability corporation organized and exists under the laws of Nevada, with its principal place of business in Minnesota.

13. Upon information and belief, Markel is a corporation organized and existing under the laws of the Commonwealth of Virginia, with its principal place of business in Richmond, Virginia. Markel is the successor by merger to Alterra Excess, the entity that sold the Markel Policy to the Policyholders.

### III. JURISDICTION AND VENUE

14. The subject matter jurisdiction of this Court is based upon 28 U.S.C. § 1332, in that there is complete diversity of citizenship among the parties, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

15.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, in that a substantial part of the events giving rise to this action occurred in this District.

## IV. THE POLICIES AND THE INSURED CONTRACT

16.     Markel sold a Commercial Excess Liability Policy Number MAX3EC50000211, (the "Markel Policy"), with a policy period of November 7, 2012 to November 7, 2013 to the Policyholders. The Policy is attached as Exhibit A hereto, and is incorporated herein by reference.

17.     The Named Insured of the Markel Policy is "Dakota Petroleum Transport Solutions, LLC & DPTS Marketing, LLC." The Markel Policy further defines "you" and "your" to include "any other person or organization qualifying as an Insured under the 'Underlying Insurance.'" See Markel Policy, Ex. A., Declarations.

18.     The Insuring Agreement of the Market Policy provides, in relevant part:

> We will pay those sums in excess of the limits shown in Item 6 of the Declarations, Schedule of Underlying Insurance, that you become legally obligated to pay as damages because of injury to which this insurance applies, provided that the "Underlying Insurance" also applies, or would apply but for the exhaustion of its applicable Limits of Insurance.

Id. at § I (1)(a).

19.     The Insuring Agreement of the Markel Policy also provides that "[t]his insurance is subject to the same terms, conditions, agreements, exclusions and definitions as the 'Underlying Insurance.'" Id. at § I (1)(b).

20.     The Underlying Insurance to the Markel Policy is Federal Insurance Company Policy No. 3597-92-72 NHO (the "Federal Policy"). Id., Ex. A. at Schedule of Underlying Insurance. Thus, the Markel Policy follows form to the Federal Policy. The Federal Policy is

attached as Exhibit B hereto, and is incorporated herein by reference. (The Markel Policy and the Federal Policy will be referred to collectively as the "Policies.").

21. The Named Insured under the Federal Policy is "Dakota Petroleum Transport Solutions LLC & DPTS Marketing." See Federal Policy, Ex. B, Liability Section, Declarations, at 1. The Federal Policy also provides that, which respect to joint ventures or limited liability companies, the Named Insured's "members" are also insureds. Id., Liability Section, Who Is An Insured, at 6.

22. PTS is a member of both DPTS and DPTS Marketing and is therefore an insured under the Policies.

23. The Insuring Agreement of the Federal Policy provides, in relevant part:

[W]e will pay damages that the insured becomes legally obligated to pay by reason of liability:

imposed by law; or

assumed in an insured contract;
For bodily injury or property damage caused by an occurrence to which this coverage applies."

Id. at Liability Section, Coverages, at 3.

24. With respect to "Investigation, Defense and Settlements," the Federal Policy provides as follows:

"[W]e will have the right and duty to defend the insured against a suit, even if such suit is false, fraudulent or groundless.

If such a suit is brought, we will pay reasonable attorney fees and necessary litigation expenses to defend:

- the insured; and

- if applicable, the indemnitee of the insured, provided the obligation to defend, or the cost of the defense, of such indemnitee has been assumed by such insured in an insured contract.

Id., Investigation, Defense and Settlement, at 4.

25. The Federal Policy defines "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Id., Definition, at 29.

26. The Federal Policy defines "bodily injury" to mean physical injury, sickness or disease "[s]ustained by a person, including resulting in death, humiliation, mental anguish, mental injury or shock at any time." Id., Definitions, at 25.

27. The Federal Policy defines "insured contract" to mean, in relevant part, "any other contract or agreement pertaining to your business … in which you assume the tort liability of another person or organization to pay damages, to which this insurance applies, sustained by a third person or organization." Id., Definitions, at 26.

28. Under DPTS Marketing's Amended and Restated Member Control Agreement (the "Agreement"), DPTS Marketing agreed to "indemnify, defend and hold harmless [PTS] and its Affiliates … from and against and pay or reimburse, as the case may be, [PTS] and its Affiliates … for, all Damages, as incurred, suffered by any such Person based upon, arising out of or relating to the transaction of the Trading Activities or acting as the Trading Member hereunder …" See Agreement, attached hereto as Exhibit C, at 8.

29. PTS, WFS Corp., WFS Inc., WFS Canada, and WPC are affiliated companies.

30 The Agreement is an "insured contract" as defined by the Policies, thus entitling, PTS, WFS Corp., WFS, Inc., WFS Canada, and WPC to coverage under the Policies.

## V.     THE DERAILMENT AND UNDERLYING ACTIONS

31.    On July 6, 2013, a rail train of over 70 tank cars loaded with crude oil en route from New Town, North Dakota to Saint John, New Brunswick derailed in Lac-Mégantic, Quebec, Canada (the "Derailment").

32.    Prior to the Derailment, WFS Inc. held title to the crude oil and had agreed to deliver it to Irving Oil.

33.    The Derailment resulted in injuries of varying kinds, including dozens of fatalities, numerous other bodily injuries and extensive property damage, including the loss of approximately 30 buildings and 20 homes in the downtown area.  In addition, the Derailment caused a spill of hundreds of thousands of gallons of crude oil in the course of being delivered to its end user for refining, requiring emergency, and ongoing, environmental response. Following the Derailment, the Policyholders were named as a defendant in various underlying actions (the "Underlying Actions"), including:

(a) The action captioned Gange v. Rail World Inc., No. 450-06-000001-135, pending in Quebec Superior Court (the "Quebec Class Action"), which seeks to hold certain Policyholders liable for bodily injury and property damage, alleges various theories of negligence against WFS;

(b) The action captioned Breton v. Montreal, Maine & Atlantic Railway, Inc., No. 1:13-cv-06194, pending in the United States District Court for the District of Maine (the "Wrongful Death Actions", ) which seek to hold certain Policyholders liable for wrongful deaths, alleges various theories of negligence against WFS;

(c) The action captioned In re: Montreal, Maine & Atlantic Railway, Ltd., Bk. No. 13-10670, pending in the United States Bankruptcy Court for the District of Maine (the

"Bankruptcy Proceeding"), brought on behalf of the now bankrupt railway that operated the trains at the time of the Derailment, seeks to hold certain Policyholders liable for negligence;

(d) The Orders of the Minister of Sustainable Development, Environment, Wildlife and Parks, dated July 29, 2013 and August 14, 2013 (the "Orders"), which are being adjudicated before the Administrative Tribunal of Quebec (the "TAQ Proceeding"), seek to hold certain Policyholders liable for remediation based solely on its ownership of the oil at the time of the Occurrence. The facts underlying the TAQ Proceeding are intertwined with the facts at issue in the other Underlying Actions.

## VI.  MARKEL'S DENIAL OF THE POLICYHOLDERS' CLAIM FOR INSURANCE COVERAGE

35. In the ten months following the Derailment, Markel has been on notice of the Underlying Actions pending against the Policyholders.

36. In fact, Markel has both received briefings and participated in meetings with underlying defense counsel about the Policyholders' defense of the Underlying Actions.

37. Throughout its participation in meetings and receipt of briefings, the only position Markel ever articulated on coverage was an untimely reservation of rights letter dated March 17, 2014.

38. During a May 22, 2014 telephone conversation with certain of the Policyholders' risk manager and broker representative at AON (Bermuda) Ltd., Markel orally notified WFS that it was denying coverage under the Markel Policy.

39. To date, Markel's March 17, 2014 reservation of rights letter is the only coverage position WFS ever received in writing.

40. The Policyholders have complied with all conditions precedent to coverage under the Markel Policy.

## XI. CAUSES OF ACTION
## COUNT I
## DECLARATORY JUDGMENT

41. The Policyholders incorporate by reference the allegations contained in paragraphs 1-40.

42. As set forth above, Markel sold to the Policyholders the Markel Policy covering, among other things, liabilities for bodily injury and property damage.

43. Markel has denied its coverage obligations for the Derailment.

44. As a direct and proximate result of Markel's refusal to acknowledge its coverage obligations, the WFS Policyholder have suffered and will continue to suffer serious harm in an amount in excess of $75,000, exclusive of interest and costs.

45. An actual and justiciable controversy exists between the Policyholders and Markel regarding the interpretation, application and meaning of the Markel Policy. Accordingly, the Policyholders are entitled to declaratory judgment of this Court of their rights and of the obligations of the Markel under the Markel Policy.

46. Declaratory relief from this Court will resolve all outstanding issues between the Policyholders and Markel under the Markel Policy.

## COUNT II
## BREACH OF CONTRACT AGAINST MARKEL

47. The Policyholders incorporate by reference the allegations contained in paragraphs 1-47.

48. The Policyholders have complied or substantially complied with all terms and conditions of the Markel Policy.

49.     The Policyholders have requested and continue to request that Markel perform its obligations under the Markel Policy.

50.     To date, Markel has refused to fulfill its obligations under the Markel Policy.

**WHEREFORE**, the Policyholders seek judgment in its favor as follows:

(a)     Pursuant to 28 U.S.C. § 2201-02, the entry of an Order declaring that the Market Policy provides coverage for the Underlying Actions arising out of the Derailment;

(b)     The entry of an award requiring Markel to pay all monetary damages suffered by the Policyholders caused by Markel's breaches, including, without limitation, compensatory damages, consequential damages, prejudgment interest, post-judgment interest, and attorneys' fees and costs; and

(c)     The award of such additional relief as the Court deems just and appropriate.

Respectfully submitted this 22nd day of May, 2014

/s/ Larry L. Boschee
Larry L. Boschee
PEARCE & DURICK
314 E. Thayer Avenue
Bismarck, ND 58501
T: (701) 223-2890
F: (701) 223-7865
llb@pearce-durick.com

John N. Ellison (pro hac vice to be filed)
Lisa A. Szymanski (pro hac vice to be filed)
REED SMITH LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103
T: (215) 851-8100
F: (215) 851-1420
jellison@reedsmith.com
lszymanski@reedsmith.com

*Attorneys for Plaintiffs,*
*World Fuel Services Corporation, World Fuel Services, Inc., World Fuel Services Canada, Inc., Western Petroleum Company, Dakota Petroleum Transport Solutions, LLC, Petroleum Transport Solutions, LLC and DPTS Marketing, LLC*